Martha K. Zelman, J.
On May 11 and May 12, 1974, the Flushing National Bank advertised to the public, through the New York Times: "For a limited time! Why tie up your funds for years? Earn 8.25% in a commercial bank — Your choice of 6 month or 12 month certificates — With a minimum deposit of $20,000, we will issue you a savings participation certificate. You will immediately be earning 8.25% on the 6 or 12 month certificate. These certificates are renewable at current interest rate then in effect, or may be cancelled at maturity.” Within the offer is stated: "Federal law and regulations prohibit the payment of time deposit prior to maturity unless 3 months of the interest thereon is forfeited and interest on the amount withdrawn is reduced to pass book rate. Withdrawals prior to maturity can be made only with the consent of the bank, and if permitted, the bank will require an additional penalty.”
Plaintiffs, Mrs. Bertha Harrison and Mr. Harold M. Harrison, bring an action against the Flushing National Bank for breach of contract in the sum of $500 each. The bank interposes an answer of general denial in all respects and alleges two affirmative defenses: One, illegality, and two, accord and satisfaction. Plaintiffs appeared at the said bank on May 14, 1974, and each purchased a $20,000 certificate covering a 12- *660 month period, at 8.25% interest. The certificates are numbered 1587 and 1588, and were to mature on May 16, 1975.
Defendant bank argues that shortly after plaintiffs acquired the certificates, it was ordered by the Comptroller of the Currency to cease and desist the issuance of certificates bearing interest which exceeded the rate established by the Board of Governors of the Federal Reserve System, and alleged that the Flushing National Bank is a national bank regulated by the Federal Reserve System. The established rate of interest at that time on the 12-month certificate was 514% per year. Therefore, the certificates carry interest that exceeded the legal maximum rate by 2%% per year. Flushing National Bank claimed that pursuant to the terms of the cease and desist order, they offered all their holders of the aforesaid 12-month certificates the option, amongst others, to redeem the certificates at the end of six months, at which time they would receive interest from Flushing National Bank at the rate of 514% per year for said six-month period, plus a personal check from one Jack Farber, chairman of the board of Flushing, for the difference between the amount paid by Flushing and the interest on the certificate at 814% per year for six months. The effect was to pay the certificate holder a total of 814% per year on its certificate for the six-month period.
On November 21, 1974, it is conceded that each plaintiff accepted in writing the offer described above and redeemed the certificates and was paid interest amounting to 814% per year of the deposited money for six months. Plaintiffs now sue to recover the interest on the certificates for the remaining six-month period at 814% and they base their claim on the theory of a breach of contract. Interestingly enough, Flushing National Bank argues that the contract upon which plaintiffs are litigating provided for payment of interest at a rate exceeding that authorized by statute. Consequently, defendant argues that plaintiffs’ claim for the interest is untenable because the bank was not allowed to pay this illegal amount of interest. The Board of Governors of the Federal Reserve System in regulation Q (12 CFR 217.3) declares:
"interest on time and savings deposits
"(a) Maximum rate. Except as provided in this section, no member bank shall, directly or indirectly, by any device whatsoever, pay interest on any time or savings deposit at a rate in excess of such applicable maximum rate as the Board *661 of Governors of the Federal Reserve System shall prescribe from time to time in § 217.7. In ascertaining the rate of interest paid, the effects of compounding of interest may be disregarded.
"(b) Modification of contracts to conform to regulation. No certificate of deposit or other contract shall be renewed or extended unless it be modified to conform to the provisions of this part, and every member bank shall take such action as may be necessary, as soon as possible consistently with its contractual obligations, to bring all of its outstanding certificates of deposit or other contracts into conformity with the provisions of this part.”
Regulation Q (12 CFR 217.7) fixed 5Vi% per year as a maximum authorized rate of interest on a 12-month certificate. Therefore, it is claimed that Flushing National Bank, by virtue of the regulation of the order of the Comptroller of the Currency, was required "to bring all of its outstanding certificates of deposit * * * into conformity with the provisions of the regulations.”
Defendants argue they were not legally permitted to pay plaintiffs more than they did, and argue that plaintiffs, in essence, are suing to collect illegal interest. It is interesting to note that the bank offered this contract, fully knowing the interest rate was illegal, as stated in their letter of November 18, 1974 to recipients of this certificate, and signed by Jack Farber, chairman of the board: "You may or may not be aware of the fact that an individual with $100,000 or more, purchasing a certificate of deposit, can directly negotiate with the bank issuing same for any rate that they agreed upon, and for practically any length of time or term or services which they agree upon. Flushing National Bank feels that an injustice has been done to the bank and to you; and that the rules and regulations prevailing on this particular part of banking are unfair, and make no provision whatsoever for the individual having less than $100,000 to invest in a certificate of deposit.”
The bank has come into court with unclean hands, fully knowing before they offered this certificate to the public, that the interest rate was illegal. Through a clever plan or scheme on the part of the bank, they apparently took $20,000 certificates and grouped them into groups of five to overcome the illegal rate of interest. The Comptroller of the Currency, immediately on seeing this ad in the New York Times, the *662 very same day, May 11, 1974, ordered the bank to cease and desist from issuing these certificates, and the bank still continued to ignore their orders, which apparently resulted in a more formal order to cease and desist being issued on the 8th day of November 1975, by the Comptroller of the Currency, Charles M. Van Horne, Regional Administrator of the National Banks for the 2nd National Bank Region.
It is, therefore, the posture of this court that Mrs. Bertha Harrison and Mr. Harold M. Harrison entered a contract which they assumed to be fully legal, and should not be penalized in any greater manner by the bank embarking upon an illegal program than if they had to prematurely withdraw their money from the bank ahead of the 12-month time.
The defendant also argues that the plaintiffs, having accepted payment made by Flushing National Bank and Jack Farber, pursuant to an agreement executed by them subsequent to the issuance of the certificates, are barred under the doctrine of accord and satisfaction from suing for damages allegedly arising from the breach of contract. The burden of proof is on the defendant, who seeks to set up the defense of accord and satisfaction as a bar to the action to plead that defense affirmatively, and to prove the necessary and essential elements of accord and satisfaction. (See 4 Carmody-Wait, NY Practice, pp 389, 390; Reilly v Barrett, 220 NY 170; Habrich v Donohue, 51 App Div 375.) "Thus, where a check has been given in payment of a disputed claim, the burden is upon the defendant to establish the elements necessary to constitute an accord and satisfaction at the time the check was delivered and accepted, and no inference will be drawn that there was an accord and satisfaction from the check itself.” (John v Coe-Stapley Mfg. Co., 201 App Div 704.)
In the instant case, plaintiffs received two checks, each in the sum of $20,000, made out to each of them, and two checks in the sum of $550, made out to each of them, dated November 18, 1975. However, these checks were deposited but did not clear due to the plaintiffs having been out of the State until December 5, 1974. Before these checks could clear the bank, plaintiffs realized that they did not wish to accept this adjustment in full settlement of their matter, and advised defendant bank, by letter dated December 4, 1975, that these checks were not being taken in full satisfaction of claims against the bank. Therefore, this court finds there has been no accord and satisfaction. According to the facts as developed at *663 the trial, plaintiffs did not mean to give the legal effect of accord and satisfaction to the paper signed at the bank. The plaintiffs should suffer no greater ill effects from the cease and desist order than they would suffer had they been forced to withdraw their money ahead of the 12-month period. "The Federal law and regulations prohibit the payment of a time deposit prior to maturity, unless three months of the interest thereon is forfeited and interest on the amount withdrawn is reduced to pass book rate, withdrawals prior to maturity can be made only with the consent of the bank, and if permitted, the bank will require an additional penalty. ” (Excerpt taken from New York Times, dated May 20, 1975.)
Therefore, it is the finding of this court that plaintiffs should be given an additional sum of interest for three months at passbook rate at 5% which plaintiffs would have had to suffer had they prematurely withdrawn their money.
Judgment to the plaintiff, Bertha Harrison, in the sum of $252.05.
Judgment to the plaintiff, Harold M. Harrison, in the sum of $252.05.